United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 13, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 06-30396
Summary Calendar

)))))))))))))))))))))))))))

FRANCIS RICHARD; ET AL

            Plaintiffs

FRANCIS RICHARD

            Plaintiff-Appellant

     v.

CINGULAR WIRELESS LLC; CINGULAR WIRELESS EMPLOYEE SERVICES LLC

            Defendants-Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:04-CV-2197

_____

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

Per Curiam:[*]

     Plaintiff-Appellant Francis Richard ("Richard") brought suit

against Defendants-Appellees Cingular Wireless LLC and Cingular

Wireless Employee Services LLC (collectively, "Cingular"),

_____

     [*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

alleging that his demotion and subsequent termination constituted unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (2000) ("Title VII"). The district court granted summary judgment to Cingular and Richard now appeals. For the reasons that follow, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL HISTORY

Richard was employed by Cingular as a Radio Frequency Performance Engineer IV, a position with responsibilities that included interviewing and recommending applicants for the position of Radio Frequency Specialist. In September 2003, Richard interviewed three applicants for an available Radio Frequency Specialist position. Richard subsequently sent an email to his superior, Ramiro Peredo ("Peredo"), recommending that Dwayne Barnes ("Barnes") be selected for the position. Cingular alleges that before sending this email, Richard showed it to Barnes and told Barnes that he was Richard's "pick."[1] Subsequently, however, Richard met with Peredo, who expressed several concerns about Barnes's fitness for the Radio Frequency Specialist position. Richard then revised his recommendations, and someone other than Barnes was hired for the open position. Richard informed Barnes that he would not be getting the position

[1] Richard now denies that he voluntarily showed Barnes the email, though he earlier conceded this.

because "upper management did not want him."

Thereafter, Barnes approached human resources employee Kim Willey ("Willey"), related to her his conversations with Richard, and complained about his failure to be offered the Radio Frequency Specialist position. Willey alerted Richard's supervisors to the alleged conversations. When questioned about whether he had showed Barnes the email or otherwise told Barnes that Barnes was being recommended, Richard twice denied showing or telling Barnes anything of the sort. Cingular commenced an investigation into the matter, led by Susan Horcharik ("Horcharik"). According to Horcharik, Barnes repeated his account of his conversations with Richard but later refused to sign a statement confirming the same. Richard, however, did sign a statement admitting that he had told Barnes he was being recommended, showed Barnes the email, and subsequently lied about both events. In October 2003, Richard was demoted to a non-managerial position, Radio Frequency Performance Engineer II. This demotion entailed a salary decrease from $78,000 to $65,000, which, after an initial oversight, went into effect in February 2004.

On February 24, 2004, Richard called Cingular's Ethics Line and complained that he had been "forced to unfairly disregard an African-American candidate" (Barnes) and that his demotion had been in retaliation for his initial recommendation of Barnes. Cingular investigated this complaint and concluded that the facts

3

"fully support[ed] the decision and the reasons for which in their entirety." On March 24, 2004, Richard filed an EEOC charge alleging that he was unlawfully demoted in retaliation for opposing practices made illegal by Title VII. On May 27, 2004, the EEOC dismissed the charge and issued Richard a right to sue letter.

On May 28, 2004, Barnes began to receive calls from Richard's wife, Maria Richard, on his Cingular-issued cellphone. Maria Richard left Barnes a voicemail stating, among other things, that he was evil, arrogant, and had ruined her husband's career, and that she wanted to meet him so "she could look him in the eyes." On June 1, 2004, Barnes reported the phone calls and voicemail to Willey. Barnes indicated that he did not welcome the phone calls and did not want to meet Mrs. Richard, and that Barnes's wife had heard the message and feared for Barnes's safety. Willey has stated that while Richard initially denied that his wife made the calls, he then admitted that he had given her Barnes's cellphone number. Willey reported Barnes's complaint to Horcharik, who began another investigation. Horcharik discovered that additional calls to Barnes's cellphone had been placed from Richard's home and Richard's own Cingular-issued cellphone. On June 8, 2004, Richard met with his superiors, including Peredo and Horcharik. Richard refused to answer many of the questions posed to him regarding the phone calls. Following the meeting, Richard's employment at Cingular was terminated.

On August 5, 2004, Richard and Maria Richard filed suit against Cingular in the Eastern District of Louisiana, alleging that Richard's demotion and termination constituted unlawful retaliation under Title VII. Cingular filed a motion for summary judgment seeking dismissal of both Richard and Maria Richard's claims. On February 22, 2006, the district court issued an order granting Cingular's motion as to both plaintiffs. The district court held that because Maria Richard had never been an employee of Cingular and her claims were wholly derivative of Richard's, she could not maintain an action against Cingular under Title VII. Maria Richard has not appealed. The district court also held that Richard had not satisfied his burden of creating a genuine issue of material fact regarding whether Cingular's proffered non-retaliatory reasons for his demotion and termination were pretextual. Richard now appeals.

## II. JURISDICTION

The district court's February 22, 2006 ruling was a final judgment that disposed of all of Richard's claims. Accordingly, this court has jurisdiction pursuant to 28 U.S.C. § 1291.

## III. ANALYSIS

1. <u>Standard of Review</u>

We review a district court's grant of summary judgment de novo. <u>Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan</u>, 293 F.3d 282, 285 (5th Cir. 2002). Summary judgment is

5

proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When deciding whether there is a genuine issue of material fact, this court must view all evidence in the light most favorable to the non-moving party.  Daniels v. City of Arlington, 246 F.3d 500, 502 (5th Cir. 2001).

2.   Title VII Retaliation Framework

     Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice" by the statute or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a). To establish a claim of retaliation under Title VII, a plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. Fabela v. Socorro

6

<u>Indep. Sch. Dist.</u>, 329 F.3d 409, 414 (5th Cir. 2003).

A plaintiff alleging Title VII retaliation may establish a causal link in two ways: either by presenting direct evidence of retaliatory motive or by providing circumstantial evidence that creates a rebuttable presumption of retaliatory motive. <u>Id.</u> at 414-15. Where the plaintiff provides only circumstantial evidence of causation, the burden-shifting framework set out in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), applies. <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 896 (5th Cir. 2002). Under that framework, the employee must first make a prima facie case for the three elements of retaliation. This prima facie case is satisfied by the production of evidence; persuasion is not necessary at this stage. <u>Baker v. Am. Airlines, Inc.</u>, 430 F.3d 750, 753 (5th Cir. 2005). If the employee succeeds in making a prima facie case, the burden of production shifts to the employer to state a legitimate, non-retaliatory reason for the employment action. <u>Id.</u> at 754-55. If the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving that the protected activity was the but-for cause of the adverse employment action. <u>See</u> <u>Montemayor v. City of San Antonio</u>, 276 F.3d 687, 692 (5th Cir. 2001). In other words, the employee must show that the employer's putative justification is unworthy of credence and is instead a pretext

7

for retaliation. Mato v. Baldauf, 267 F.3d 444, 452 (5th Cir. 2001).

### 3. Richard's Demotion

Richard argues that he has made out a prima facie case that his demotion was retaliatory and has created a genuine issue of material fact regarding whether Cingular's proffered reasons for his demotion were pretextual. The district court held that Richard had failed to demonstrate that Cingular's non-retaliatory reasons were mere pretext. This court may affirm the district court's grant of summary judgment on any grounds supported by the record. Lifecare Hosps., Inc. v. Health Plus of La., Inc., 418 F.3d 436, 439 (5th Cir. 2005). Here, we do not reach the issue of pretext because we hold that Richard has not made out his prima facie case of retaliation.

Richard has failed to produce evidence that he engaged in activity protected by Title VII prior to his demotion. Protected activity in the context of a retaliation claim is (1) opposing discriminatory practices or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). At the time of his demotion, Richard had not yet called the Cingular Ethics Line to complain, nor had he filed his charge with the EEOC. Richard presents as protected activity prior to the demotion his acts of (1) recommending that Barnes be given the Radio Frequency Specialist position and (2) telling Barnes

that he would not be receiving the position and encouraging him to "seek justice." Richard's act of recommending Barnes for the open position does not qualify as protected activity because it did not oppose or protest an unlawful employment practice. See Moore v. United Parcel Serv., Inc., 150 F. App'x 315, 319 (5th Cir. 2005) (unpublished). Richard's subsequent conversation with Barnes also fails to qualify as protected conduct. Even if we assume, *arguendo*, that telling a co-worker that he had suffered unlawful discrimination is protected activity, Richard does not allege nor produce any evidence that he suggested to Barnes that Barnes's failure to receive the available position was due to racial discrimination. To satisfy the protected activity requirement, an employee must oppose conduct made unlawful by Title VII; complaining of unfair or undesirable treatment not addressed by Title VII will not suffice. See id.; see also Harris-Childs v. Medco Health Solutions, Inc., 169 F. App'x 913, 916 (5th Cir. 2006) (unpublished). We therefore conclude that Richard has not demonstrated that he engaged in protected activity prior to the demotion. Accordingly, the district court properly granted summary judgment to Cingular on Richard's claim that his demotion was retaliatory.

4.   Richard's Termination

Richard also brings a claim for retaliation on the basis of his termination by Cingular. Before his termination, Richard had called

the Cingular Ethics Line to complain of retaliatory demotion and had also filed a complaint with the EEOC. We therefore conclude that Richard had engaged in activity protected by Title VII. See Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000). Richard's termination qualifies as an adverse employment action, thus satisfying the second prong of his prima facie retaliation case. Dehart v. Baker Hughes Oilfield Operations, No. 05-21087, 2007 U.S. App. LEXIS 1362, at *10 (5th Cir. Jan. 19, 2007). We therefore turn to whether Richard has demonstrated that a causal link existed between his protected activity and subsequent termination. Cingular argues that Richard has made no such showing. This court allows, however, for an inference of causation to be drawn where the adverse employment action occurs in close temporal proximity to the protected conduct. Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001). In Evans, we relied upon decisions from district courts in this circuit that found "a time lapse of up to four months . . . sufficient to satisfy the causal connection for summary judgment purposes." Id.[2] In this case, the time span between Richard's EEOC complaint and his termination was roughly two and a half months. We therefore will allow for an inference of causation, and we conclude that Richard has made out his prima facie case of retaliation.

---

[2] We note, however, that the Supreme Court has acknowledged other circuit court decisions that found three and four month periods too long to allow for an inference of causation. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).

Cingular, however, has satisfied its burden of stating a legitimate, non-retaliatory justification for Richard's termination. Cingular presented several such justifications: (1) Richard's wife's harassing phone calls to Barnes, which were in violation of Cingular's policy against employee harassment; (2) Richard's refusal to cooperate fully with Cingular's investigation into his involvement in the harassing phone calls; and (3) Richard's earlier lies to Cingular supervisors regarding his conversations with Barnes. The burden therefore falls to Richard to demonstrate that retaliation was the but-for cause of his termination. See Montemayor, 276 F.3d at 692. Accordingly, at the summary judgment stage, Richard must demonstrate that a genuine issue of material fact exists regarding whether Cingular's justifications were pretextual.

Richard first argues that he presented evidence that Barnes did not find the phone calls from Maria Richards threatening. He cites to a memorandum by Willey in which she stated that Barnes told her that Maria Richard's voicemail was "not very nice." This memorandum, however, also stated that Barnes's wife feared for his safety after the calls. Based on Barnes's statements to Willey, Cingular could have concluded that Richard's wife had made phone calls to a Cingular employee that were, if not physically threatening, certainly harassing and inappropriate. Cingular also could have concluded, in light of the facts that

Maria Richards called Barnes's Cingular-issued cellphone and that Barnes "heard a male voice in the background" during the voicemail, that Richard was complicit in his wife's calls. We agree with the district court that Richard has not demonstrated that a genuine issue of material fact exists regarding whether Cingular's justification based on Maria Richards' phone calls was pretextual.

Richard then proposes that Cingular's justification based on his failure to cooperate with their investigation into the phone calls was mere pretext because he was, in fact, cooperative. While Richard concedes that he did not answer numerous questions posed during the meeting with his supervisors, Richard argues that he was told that he could have additional time to answer these questions in writing. The parties dispute how long Richard was told he would have to submit these answers--Richard claims forty-eight hours, Cingular claims twenty-four--and when exactly the decision was made to terminate Richard--Richard argues that the decision was made before even twenty-four hours had elapsed.

Even if we were to conclude that Richard had demonstrated that a genuine issue of material fact exists regarding whether his alleged lack of cooperation was merely a pretext, however, Richard "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates" to satisfy his burden. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 220

12

(5th Cir. 2001). As we have seen, Richard has not successfully rebutted Cingular's justification based on his wife's phone calls to Barnes. Richard has also not rebutted Cingular's justification based on his earlier lies to his supervisors regarding his conversations with Barnes. Richard argues that "there's no evidence in the record that [he] lied to his superiors, except for the self-serving reports generated by Cingular." On the contrary, Cingular has presented a statement signed by Richard, dated October 6, 2003, admitting that he lied twice to Cingular personnel regarding his statements to Barnes because he "was afraid of what would happen" to him. Even if Richard could establish that he did not in fact lie, "an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination. Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991). Based on Richard's conduct and admissions at the time, Cingular could have believed that Richard had lied to his supervisors. We conclude that Richard has not demonstrated that a genuine issue of material fact exists regarding whether Cingular's justification based on Richard's false statements to his superiors was unworthy of credence.

In sum, Richard has not satisfied his burden under the McDonell Douglas framework of demonstrating that Cingular's proffered reasons for his termination were pretextual and that

retaliation was the but-for cause of his termination. Accordingly, the district court properly granted summary judgment to Cingular on Richard's claim that his termination was retaliatory.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court granting summary judgment to Cingular.

AFFIRMED.