Robert SCHOFIELD, Appellant

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Robert Pidich, Rose C. Johnston, and Kellee Tinsley, Appellees.**

No. 06–4451.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Oct. 25, 2007.

Filed Oct. 30, 2007.

Peter G. Loftus, Loftus Law Firm, Waverly, PA, for Appellant.

Mark A. Saloman, Proskauer Rose, Newark, NJ, for Appellees.

Before: SLOVITER, CHAGARES and HARDIMAN, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

This employment discrimination case is an appeal from the District Court's grant of summary judgment in favor of Metropolitan Life Insurance Company (MetLife) and one of its employees, Robert Pidich (Pidich).[1] Plaintiff Robert Schofield (Schofield) brought claims of age and disability discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. §§ 951 *et seq.*, and the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, complaining that he was unfairly treated upon his return from disability leave in the winter of 2001 and that MetLife's ultimate decision to terminate him in May 2002 was motivated by his age and disability.[2]

---

1. The District Court previously dismissed claims against two other MetLife employees, Defendants Rose Johnston and Kellee Tinsley, and Schofield has not challenged their dismissal on appeal.

2. Schofield also brought claims under the

## I.

"Our standard of review over the District Court's grant of summary judgment is plenary, and we apply the same standard that the District Court should have applied." *In re Color Tile Inc.*, 475 F.3d 508, 512 (3d Cir.2007). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir.2007) (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). Under Rule 56 of the Federal Rules of Civil Procedure, we "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (citation omitted).

## II.

Because we write for the parties, we repeat only the facts essential to our decision. MetLife operates an information technology support center in Clarks Summit, Pennsylvania. Beginning in 1997, Schofield served as a project manager at the facility, and was charged with supervising a team of programmers and information technology consultants. Schofield reported directly to Pidich, who considered Schofield one of the best project managers at the facility.

Regrettably, Schofield began suffering from severe anxiety and depression in 2001. His condition gradually worsened, and in January 2002 he was placed on disability leave after his condition caused him to miss work through most of the previous month. While on disability leave, Schofield attempted suicide.

Schofield returned to work at the beginning of April 2002. Shortly before his return, Schofield spoke with Pidich, who allegedly suggested that Schofield probably would not be reinstated as a project manager but would instead act as a consultant to an unspecified individual who would take over his previous position. Nevertheless, Schofield returned as a project manager and not as a consultant. Pidich and one of Schofield's team members, Defendant Tinsley, agreed to cover for him in the event he felt it necessary to leave work due to his illness, and Schofield did miss work on several occasions. But his work performance was otherwise satisfactory and Pidich continued to think of Schofield as one of his best project managers.

Schofield's working relationship with Tinsley was more problematic, however. Schofield believed that Tinsley became irritable and would often snap at him over trivial matters. Schofield began sending Tinsley emails unrelated to work and often inquired into Tinsley's personal matters, suggesting on one occasion that he was concerned to see her smoking at a colleague's wedding. In an April 26, 2002 email, Schofield confessed to "a very strong attachment and affection" for Tinsley and declared that Tinsley came "second only to my wife." Finally, in a May 2, 2002 email entitled "All or nothing," Schofield thanked Tinsley for her support during his illness but added that his recovery was not complete and that " 'Option B' is still a serious consideration." Schofield concluded:

> I have been very open about how I have come to regard you. I would like to know how you see me.
>
> Sorry to put this on you but I'm sure you can understand I can't stand not

Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* and state common law. Those claims were dismissed on December 16, 2003 and Schofield does not challenge their dismissal on appeal.

knowing the whole picture and being able to make sense out of it. That usually gets me in trouble but that's the way it is.

After reading Schofield's email, Tinsley became upset and left work. Shortly thereafter, Tinsley contacted Rose Johnston (Johnston), a MetLife Human Resources Generalist, and complained about Schofield's actions. Johnston treated Tinsley's call as a complaint of harassment and hostile work environment, and initiated an investigation. Fearing for her safety, Tinsley did not return to work until after Schofield's termination.

On May 7, 2002, Johnston and Mark Davis, another MetLife human resources staffer, met with Schofield to discuss Tinsley's complaint. As Schofield admits, Johnston stated at the beginning that the meeting did not concern the possible termination of his employment. Nevertheless, Schofield interrupted Johnston shortly after the meeting had started, stating: "Let me save you some time. I cannot deal with this right now. I'm out of here." He then placed his facility security pass on the conference table and went home. Both Johnston and Davis believed Schofield intended to resign, and Johnston began processing his resignation the same day.

The next day Schofield contacted Johnston to discuss the situation and requested a meeting regarding a possible return to work. Schofield, Johnston, and Pidich met shortly thereafter. Johnston and Pidich informed Schofield that his return would be contingent on limiting his contact with Tinsley and that this would likely require him to transfer to another facility team. This condition was consistent with MetLife's policy of separating employees involved in a harassment complaint. Schofield left the meeting without agreeing to these conditions, but later called Johnston and Pidich to request unconditional rein-statement until Tinsley decided that she wanted to return to work. If Tinsley returned, Schofield suggested she be placed on special assignment while he and MetLife negotiated a retirement package. MetLife rejected Schofield's proposal.

## III.

On September 15, 2006, 2006 WL 2660704, the District Court granted summary judgment to Defendants, finding that Schofield had failed to present sufficient evidence that his position and job duties had changed following his return from disability leave or that his leave was a factor influencing MetLife's actions during the investigation of Tinsley's harassment complaint. The District Court also found that Schofield had failed to present evidence that his voluntary resignation was an adverse employment action or that MetLife's actions were motivated by discriminatory animus.

■ Under the FMLA, an employee returning from leave is entitled "to be restored by the employer to the position of employment held by the employee when the leave commenced," or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The District Court rejected Schofield's claim that he was not reinstated to the same or an equivalent position, noting that he returned in April 2002 to the same project manager position with the same duties and responsibilities. Schofield argues that the District Court overlooked Pidich's suggestion that Schofield would not be reinstated as a project manager, as well as MetLife's insistence that Schofield limit his contact with Tinsley if he wanted to be reinstated after his apparent resignation on May 7.

Contrary to Schofield's argument, the District Court explicitly noted Schofield's

reliance upon his conversation with Pidich, and correctly found that mere requests, offers, or even threats to change positions are not adverse employment actions that warrant recovery under the FMLA. *Schofield v. Metro. Life Mut. Ins. Co.,* 2006 WL 2660704, at *5 (M.D.Pa. Sept. 15, 2006) (citing *Ajayi v. Aramark Bus. Servs., Inc.,* 336 F.3d 520, 531 (7th Cir.2003)). The same rationale applies to MetLife's requests that Schofield limit his contact with Tinsley. Even if we were inclined to overlook the objective evidence that Schofield had already resigned his position, or to find that the requested limitation on contact with Tinsley would have constituted a sufficient change in Schofield's job position, MetLife's "threats" in the context of its investigation of the Tinsley complaint cannot serve as the premise for his claim that he was not reinstated to an equivalent position.

■ Nor can MetLife's actions during the investigation form the basis of an FMLA retaliation claim. Schofield suggests that the manner in which MetLife investigated Tinsley's harassment complaint was motivated by his medical leave. We reject this argument, and agree with the District Court that the full month between Schofield's return from leave and MetLife's investigation entitles MetLife to summary judgment. To prevail on a retaliation claim, an FMLA plaintiff must show, among other things, that the adverse decision was causally related to taking FMLA leave. *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 146 (3d Cir.2004). We have been reluctant to infer a causal connection based on temporal proximity alone. *See Weston v. Pennsylvania,* 251 F.3d 420, 431 (3d Cir.2001). Unless the timing is "unusually suggestive of retaliatory motive," we have generally required "timing plus other evidence." *See Williams v. Phila. Hous. Auth. Police Dep't.,* 380 F.3d 751, 760 (3d Cir.2004) (internal citation omitted). Here, the month between Schofield's return and the Tinsley investigation, during which both Pidich and Tinsley covered for Schofield during absences necessitated by his illness, is antithetical to conduct "unusually suggestive of retaliatory motive." Furthermore, Schofield has submitted no evidence to suggest that MetLife's decision to initiate the investigation was motivated by his disability leave,[3] that MetLife did not have a reasonable basis to treat Tinsley's complaint seriously, or that MetLife's policy of separating employees involved in a harassment complaint was somehow a pretext for discriminatory retaliation.

■ Schofield's failure to persuasively challenge MetLife's asserted justifications for its actions in investigating the Tinsley complaint also dooms his ADA, ADEA, and PHRA claims. To avoid summary judgment an employment discrimination plaintiff must present sufficient evidence from which a reasonable fact-finder could conclude that the employer's proffered legitimate, nondiscriminatory reasons are "either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie,* 32 F.3d 759, 764–65 (3d Cir.1994). Here, Schofield makes no attempt to undermine MetLife's asserted justifications, and instead points to alleged remarks made by Pidich and an out-of-state MetLife employee to the effect that MetLife was targeting employees

---

**3.** Schofield makes much of an alleged statement by Pidich that the incident with Tinsley was all Schofield's fault "because [Schofield] was sick." Assuming *arguendo* that this statement demonstrates discriminatory animus, there is no evidence that Pidich was involved in the decision to initiate the investigation. Moreover, Pidich's alleged statement does nothing to challenge the legitimate and non-discriminatory rationale MetLife has asserted to justify its actions.

over 50 years of age for termination. As the District Court observed "[s]tray remarks ... unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 545 (3d Cir.1992). It is unclear when Pidich made the alleged remark, and in any case the comment had virtually nothing to do with the decision process that affected Schofield, namely an investigation of a sexual harassment complaint that concluded with Schofield abruptly leaving the company. Likewise, the out-of-state Met-Life employee had absolutely no role in the investigation of the Tinsley complaint. Accordingly, the District Court was plainly correct in finding that Schofield had not met his burden under *Fuentes.*

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Defendants.