# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 17, 2013

No. 12-11107

Lyle W. Cayce
Clerk

MARY KAT COLEMAN,

Plaintiff - Appellant

v.

JASON PHARMACEUTICALS,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-1507

Before DAVIS, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Mary Kat Coleman ("Coleman") appeals the district court's granting of Defendant-Appellee Jason Pharmaceuticals's ("Pharmaceuticals") motion for summary judgment on Coleman's retaliation claim, arguing that she had established a fact issue with respect to whether a causal connection exists between her protected activity and the adverse employment action. Coleman also contends that the district court erred in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11107

relying on inadmissible evidence in its decision to grant summary judgment. Finding no reversible error, we AFFIRM for the following reasons.

### Causation Element of Retaliation Claim

Coleman contends that she was terminated in retaliation for the complaints she made against other employees. To establish a prima facie case of retaliation under Title VII, a plaintiff "must establish that: (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport,* 492 F.3d 551, 556–57 (5th Cir. 2007). Pursuant to the framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), "[i]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire v. Louisiana*, 480 F.3d 383, 388–89 (5th Cir. 2007) (internal citation omitted).

An employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533–34 (2013). In order to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

Coleman worked as a packer at Pharmaceuticals's Distribution Center. During Coleman's employment, Faith Underwood was the Human Resources Business Partner. In January of 2011, Underwood conducted an investigation regarding complaints made against three supervisors at Coleman's work site. Coleman had not made the complaints that instigated this investigation. During

2

No. 12-11107

this investigation, Underwood received several reports from employees (including Coleman) with respect to the managers' inappropriate conduct. After completing her investigation, Underwood recommended that the three supervisors be terminated, and they were terminated.

Subsequently, in March of 2011, Coleman met with Underwood and made complaints about her co-workers, alleging that they had acted inappropriately toward her and viewed her as a "whistleblower." Underwood then interviewed numerous employees about Coleman's complaints. Instead of providing support for Coleman's complaints, Underwood concluded that these interviews cast doubt on Coleman's accusation and also provided negative feedback regarding Coleman's behavior. Ultimately, Underwood recommended terminating Coleman for two reasons. First, her investigation determined that Coleman made false accusations regarding a co-worker's conduct because she believed he interfered with her working overtime. Second, Underwood concluded that Coleman was a divisive force in the workplace because Coleman had told some of her co-workers not to associate with certain other employees. Coleman was terminated upon Underwood's recommendation.

The district court assumed, without deciding, that Coleman's harassment complaints to Underwood in March of 2011 constituted "protected activity." There is no dispute that Coleman's termination constituted an adverse action. Apparently assuming that Coleman had established a prima facie case, the district court nonetheless held that Coleman failed to rebut Pharmaceuticals's legitimate, non-discriminatory reason for terminating Coleman because, other than the temporal proximity of Coleman's protected activity to her termination, she provided no other evidence of a retaliatory motive. Thus, the issue on appeal is whether the district court erred in finding that Coleman had not shown a conflict in substantial evidence with respect to whether Pharmaceuticals's allegedly retaliatory motive was the but-for cause of her termination.

3

No. 12-11107

Although Coleman admits there is no evidence that Underwood harbored a retaliatory motive, she contends that Underwood's decision was influenced by her co-workers's retaliatory motives. When an "ordinary employee" recommends termination of a plaintiff employee for a discriminatory reason, evidence of such animus is not typically attributable to the employer who ultimately terminates the employee. *Long*, 88 F.3d at 306. But "[i]f the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary co-workers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (citation and internal quotation marks omitted). Thus, to prevail under a cat's paw theory, a plaintiff must show that a co-worker "exhibited discriminatory animus," and also that "the same co-worker possessed leverage, or exerted influence, over the titular decisionmaker." *Id.* (citations and internal quotation marks omitted).

Coleman summarily asserts that the investigation conducted by Faith Underwood was unduly influenced by her co-workers. Coleman bases this assertion entirely on the fact that, in deciding to recommend Coleman's termination, Underwood relied on "negative feedback" from her co-workers. Coleman claims that these co-workers "had retaliatory animus toward her" because they viewed her as a "whistleblower" after her complaints. However, Coleman points to nothing in her co-workers' statements showing animus related to her complaints, and there is no evidence that any of her co-workers actually recommended that she be terminated. Indeed, there is no evidence, outside of her own testimony, that her co-workers even viewed her as a "whistleblower," as Coleman was not the employee that triggered Underwood's January 2011 investigation, and she was merely one of "several" employees with whom Underwood met during that investigation. We have noted that an employee cannot establish that an employer's reason for termination is pretexual

4

No. 12-11107

simply by "disputing the truth of the underlying facts for that reason." *Haverda v. Hays County*, __ F.3d __, No. 12–51008, 2013 WL 3753964, at *11 n. 1 (5th Cir. July 17, 2013).  Simply disputing the underlying facts "merely implies that an employer may have made a mistake in deciding to take action against an employee.  Because even an incorrect belief that an employee's performance is inadequate qualifies as a legitimate reason to terminate an at-will employee," an employee must submit evidence to "support an inference that the employer had a retaliatory motive, not just an incorrect belief." *Id.*  Here, even assuming Underwood mistakenly believed the negative feedback from Coleman's co-workers, Coleman has failed to submit any evidence of a retaliatory motive.[1] Indeed, when asked during her deposition whether her co-workers "had any input in the decision to terminate" her, Coleman responded that she had "no idea."  In the absence of virtually any evidence showing that her co-workers had an animus that influenced Underwood's recommendation, Coleman has fallen well short of showing "a conflict in substantial evidence" on the question of whether a retaliatory motive was the but-for cause of her termination.[2]  Thus,

---

[1] With respect to Coleman's evidence of temporal proximity, the district court correctly observed that close timing between a protected activity and an adverse action, standing alone, is not enough to show but-for causation. *See McCoy*, 492 F.3d at 562.  Instead, such temporal proximity must be coupled with other evidence showing a retaliatory motive.  *Id.*  Because Coleman has not brought other evidence raising an inference of retaliation, the temporal proximity, by itself, is not enough to establish a but-for causation.

[2] Coleman also attempts to show pretext by alleging disparate treatment. *See Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (explaining that "[d]isparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation").  Coleman claims that Underwood recommended terminating Coleman for her use of the term "Hispanics," but did not recommend terminating a co-worker, Georgina Martinez, for using the "n word." Coleman's allegation is misleading because Martinez was in fact reprimanded for using the "n word."  In contrast, Underwood recommended Coleman's termination based not only on her use of the term "Hispanics" in an offensive manner, but also because she had engaged in other misconduct.  Her claim of disparate treatment fails because Coleman and Martinez are not "nearly identical, similarly situated individuals."  *Id.* Moreover, Coleman admits in her brief that there is "no suggestion" that Underwood "harbored any retaliatory animus toward the plaintiff."

the district court properly concluded that there was no fact issue with respect to whether a causal connection existed between Coleman's filing a complaint and her termination.

### Admission of Affidavit and Unsworn Statements

Coleman contends that the district court relied upon incompetent summary judgment evidence in granting Pharmaceuticals's motion for summary judgment.  Coleman argues that the affidavit failed to explain how the affiant had personal knowledge of the information set forth therein and contained bare allegations of fact and conclusory legal conclusions.  Coleman also contends that her co-workers' statements that were attached to the motion were unsworn and thus inadmissible.  This Court reviews the admission of evidence for abuse of discretion. *United States v. Anderson*, 933 F.2d 1261, 1267–68 (5th Cir. 1991).

A district court may only consider admissible evidence in ruling on a motion for summary judgment.  FED. R. CIV. PROC. 56(c)(2); *Mersch v. City of Dallas*, 207 F.3d 732, 734–35 (5th Cir. 2000).  Here, Coleman's co-workers' unsworn statements were attached to Underwood's affidavit, but the statements were not admitted to provide the truth of the matter asserted.  Instead, the employees' unsworn statements were offered to prove what the employees had told Underwood, and she relied upon those statements in making the decision to terminate Coleman. *See Brauninger v. Motes*, 260 F. App'x 634, 636–37 (5th Cir. 2007) (explaining that the employees' statements given to the human resource director during an investigation of a claim of sexual harassment did not constitute hearsay because they were offered to prove what was said to the human resource director—not the truth of what was asserted in the statements).  Accordingly, because the unsworn statements were not offered to prove the truth of the matter asserted in them, Coleman has not shown that the district court erred in admitting and considering the unsworn statements.

No. 12-11107

Further, in Brauninger, this Court recognized that although the human resource director's statements in the reports constitute hearsay, such statements are admissible under the business records exception to the hearsay rule. 260 F. App'x at 637–38; FED. R. EVID. 803(6). Rule 803(6) allows admission of reports that are made at or near the time of the event by a person with knowledge of the information if the records are made as a regular practice of that activity and are kept in the course of a regularly conducted activity of the business. *Id.*; FED. R. EVID. 803(6)(A)-(C). Also, the above conditions must be certified by the custodian or another qualified witness. FED. R. EVID. 803(6)(D). In *Brauninger*, this Court held that the district court correctly ruled that the "reports were made at or near the time of the investigations, were based on [the human resource director's] personal knowledge of their own investigations, and were the result of a regularly conducted business activity." *Id.* at 637. Additionally, this Court opined that the district court "properly noted that the investigation and documentation of sexual harassment allegations are ordinary business practices and regular parts of [the human resource director's] duties." *Id.*

Underwood signed an affidavit that provided that she is the custodian of records for Pharmaceuticals. Her declaration further provided that the attached records were made and kept in the regular course of Pharmaceuticals's business and that the record was made at or near the time of the investigation. Accordingly, as in *Brauninger*, Underwood conducted the investigation and documentation of the discrimination and harassment claims raised by employees of Pharmaceuticals as an ordinary business practice in the course of her duties as a Human Resources Business Partner. Underwood's affidavit also provides that the reports were made with her personal knowledge and around the time of the investigation. Coleman has failed to show that the challenged affidavit and statements are inadmissible. Thus, she has failed to show that the district

No. 12-11107

court abused its discretion in considering that evidence in granting summary judgment.

The district court's judgment is AFFIRMED.