**REVISED November 25, 2015**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31090

United States Court of Appeals
Fifth Circuit

**FILED**

November 17, 2015

Lyle W. Cayce
Clerk

TYRIKIA PORTER,

Plaintiff - Appellant

v.

HOUMA TERREBONNE HOUSING AUTHORITY BOARD OF
COMMISSIONERS, doing business as Houma Terrebonne Housing
Authority,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, DAVIS, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

In this case, our court considers a retaliation claim by an employee whose attempt to rescind her resignation was denied. Tyrikia Porter worked for the Houma Terrebonne Housing Authority for several years. She offered her resignation in June of 2012, but before finishing her employment, she testified against the Executive Director, Wayne Thibodeaux, claiming sexual harassment. When Porter attempted to rescind her resignation at the urging of other superiors at work, Thibodeaux rejected her rescission.

No. 14-31090

Because we must consider the factual context of a retaliation claim to determine if the employer has taken an adverse employment action, and because Porter has demonstrated a substantial conflict of evidence on the question of whether her employer would have taken the action 'but for' her testimony, we reverse the district court's grant of summary judgment.

## I.

### A. Factual History

In considering a motion for summary judgment, courts "must view the evidence in the light most favorable" to the party opposing summary judgment.[1] The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor."[2] While the court "must disregard evidence favorable to the moving party that the jury is not required to believe," it "gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses."[3]

Tyrikia Porter first worked at the Houma Terrebonne Housing Authority ("HTHA") from February 2001 to January 2005. During that time, her duties included answering phones and receiving housing applications. She left briefly to work in a chemistry lab at Nicholls State University, but Jan Yakupzack asked Porter to return to the HTHA in July 2005 as a Housing Manager I, a position with greater responsibilities including more client contact and substantive processing of applications. In 2010, the HTHA promoted Porter to Housing Manager II, a promotion that granted her more supervisory authority.

In April 2006, the HTHA hired Wayne Thibodeaux as executive director.

---

[1] *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (internal quotation marks omitted).
[2] *Id.* at 1863 (internal quotation marks omitted).
[3] *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003).

No. 14-31090

Within a year of his arrival, his behavior was making Porter uncomfortable. He asked her to lunch and if she would attend trainings with him involving overnight travel. He made comments on Porter's appearance, clothes, and weight, making some comment nearly every time he saw her, which was "more or less on a daily basis." His comments included statements that she "must have been thinking about him as [she] got dressed." He "would single [her] out in meetings" to make these comments. He would also continually stare at her. When the entire office exchanged "kiddy" Valentine's Day cards, he displayed the one he received from Porter (but not those received from other coworkers) in his office. When leaving voicemails, he twice commented on her "sexy voice." In about 2011, Thibodeaux stated that Porter was fornicating with her fiancé Troy Johnson and that "fornication" caused her to miscarry in 2009. He then blocked his office door to prevent her leaving until she asked him to move several times.

Porter felt the need to avoid Thibodeaux and adjust her behavior to stave off his comments, which other employees noticed and commented on. Throughout her time at the HTHA, Jan Yakupzack was her direct supervisor. Porter reported some of Thibodeaux's conduct to her, but did not file a formal grievance.

Porter tendered her resignation on June 6, 2012, to take effect on August 1, 2012. She was aware other employees had been allowed to rescind resignations, but at the time of her resignation, Porter did intend to actually leave. On July 25th, she requested that her resignation be put off until September 1st, so that she could complete projects, train staff, and assist in inspections. Thibodeaux approved the request the same day, thus "extend[ing] [her] resignation to September 1, 2012."

In connection with an unrelated matter, Porter's fiancé and fellow HTHA employee, Troy Johnson, was scheduled to testify at a grievance hearing

initiated on or about July 12th. Porter decided to also testify at the hearing about Thibodeaux's behavior towards her.  Prior to testifying at the hearing, Porter was contacted by the Chairman of the HTHA Board of Commissioners, Allan Luke, who asked her if she planned to pursue any charges, and asked her to consider rescinding her resignation.  Porter said she would consider his request and would decide what to do about sexual harassment charges after testifying at the hearing on Johnson's grievance.

On or about July 25th,[4] Porter testified about Thibodeaux's inappropriate conduct at the grievance hearing. As a result of the hearing, the Housing Authority Board directed that Thibodeaux and his employees undergo sexual harassment training, and indicated that he should behave more carefully and appropriately in the future.

In late August, Yakupzack also asked Porter to consider rescinding her resignation. She also reached out to Porter's mother and pastor to encourage her to stay on. September 1, 2012—the effective date of Porter's resignation—fell on the Saturday of Labor Day weekend.  On the Tuesday after Labor Day, September 4th, Porter wrote a letter stating that she had "decided to rescind [her July 25th] resignation notice and remain an employee" of the HTHA.  She also requested—and Yakupzack granted—52 hours of personal leave, beginning that same afternoon and continuing through the end of the following Tuesday the 11th. Yakupzack forwarded the rescission letter to Thibodeaux, stating that she fully supported retaining Porter, and that both she and Thibodeaux both knew that Porter was an asset to the Agency.  Acting in his sole discretion, Thibodeaux denied the request on September 10th.  This is the

---

[4] There is some evidence the hearing may actually have taken place August 2nd. The district court found that it took place July 26th (not the 25th), but it supports that finding with a citation to Porter's deposition transcript, where she says the hearing took place on the 25th, so it appears the district court may be mistaken.

No. 14-31090

only time an employee "was separated from" the HTHA against Yakupzack's advice. Porter and her supporters appealed to the Board after the decision, but did not succeed.

As to the reason for the decision not to accept rescission, Thibodeaux stated that he had "determined that that person was not satisfied or happy being an employee of the . . . Housing Authority." Porter states she was in fact happy with her job, and believes her rescission was not accepted because of her testimony at the hearing.

## B. Procedural History

Porter filed an EEOC Charge of Discrimination on March 27, 2013 alleging that she was sexually harassed until her "discharge" and was discriminated against in "retaliation for opposing practices made unlawful under Title VII." She received a right-to-sue letter. Porter filed suit asserting Title VII and state law claims for retaliatory discharge and "sexual harassment/hostile work environment" in the Eastern District of Louisiana. The parties consented to a magistrate judge handling all proceedings. The HTHA moved for summary judgment, which the court granted over Porter's opposition. Porter timely appealed, challenging the grant of summary judgment only as to the Title VII retaliation claim.

## II.

"This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court."[5] Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

---

[5] *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 275-76 (5th Cir. 2014).

[6] Fed. R. Civ. P. 56(a).

5

No. 14-31090

## III.

To establish a prima facie retaliation case, Porter must show: (1) she was engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.[7] There is no dispute about the first element since it is clear that Porter's testimony was a protected activity. The first contested issue before the Court, then, is whether or not the HTHA's refusal to accept Porter's rescission of her resignation constitutes an adverse employment action.

## A.

This Court and others have previously held that the failure to accept a rescission of resignation is not an adverse employment action.[8] These cases, however, predate important Supreme Court precedent about what constitutes an adverse employment action, *Burlington Northern*,[9] or otherwise do not address the issue of retaliation. Appellee does point to one retaliation case

---

[7] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

[8] *Mowbray v. Am. Gen. Life Co*, 162 F. App'x 369, 374-76 (5th Cir. 2006) (in pre-*Burlington Northern* FMLA retaliation case, holding that resignation in the absence of a constructive discharge was not an "adverse employment action"); *Pownall v. City of Perrysburg*, 63 F. App'x 819, 823 (6th Cir. 2003) (prior to *Burlington Northern*, holding in FMLA case (not based on retaliation) that no adverse employment action had occurred under Ohio law where employee quit, filled out and turned in associated forms, and left before the end of the workday, then later tried to rescind her resignation); *Wilkerson v. Springfield Pub. Sch. Dist. No. 186*, 40 F. App'x. 260, 263 (7th Cir 2002) (holding that refusal to accept rescission of resignation was not adverse employment action in a Title VII race discrimination [not retaliation] case); *Schofield v. Metro. Life Ins. Co.*, No. 3:CV-03-0357, 2006 WL 2660704, at *5 n.6, *9 (M.D.Pa. Sept. 15, 2006) (in age and disability discrimination claims, holding that failure to accept rescission of resignation was not an adverse employment action, but refusing to so find as to retaliation claim) *aff'd*, 252 F. App'x 500 (3d Cir. 2007).

[9] *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006).

No. 14-31090

issued after *Burlington Northern*, *Smith v. DeTar Hospital LLC*,[10] but the case did not take into account the changed standard.

In *Burlington Northern*, the Supreme Court clarified that the "adverse employment action" is in fact not limited to "workplace-related or employment-related retaliatory acts and harm."[11] The key question is whether the challenged action is "materially adverse" in that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[12] The standard is objective,[13] but "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."[14]

As this Court previously held in *Donaldson v. CDB Inc.*, *Burlington Northern* "abrogated [the Fifth Circuit's] previous approach, which required showing an 'ultimate employment decision'" and "established a less demanding standard for judging whether conduct is actionable as retaliation."[15] A few courts have applied *Burlington Northern* to rescission of resignation cases. This Court, for example, appeared to assume without deciding that failure to accept rescission could constitute an adverse employment action in *Barkley v. Singing River Electric Power Ass'n*.[16] One district court similarly assumed that failure to accept a resignation might constitute an "adverse employment

---

[10] No. CIV.A. V-10-83, 2012 WL 2871673, at *13 (S.D. Tex. July 11, 2012) (in FMLA retaliation case, finding that refusal to accept rescission of a resignation was not adverse employment action relying on two pre-*Burlington Northern* cases and the discrimination (not retaliation) portion of a post-*Burlington Northern* case).

[11] *Burlington*, 548 U.S. at 67.

[12] *Id.* at 57.

[13] *Id.* at 68-69.

[14] *Id.* at 69.

[15] 335 F. App'x. 494, 506 (5th Cir. 2009).

[16] 433 F. App'x 254, 259-60 (5th Cir. 2011) (concluding that an employee whose rescission of resignation was denied had not made a prima facie case on the basis that the employee had not shown a causal link between the protected activity and the adverse employment action.)

action" for retaliation purposes, but declined to decide the issue.[17]

Other courts have found that even under *Burlington Northern*, the failure to accept rescission was not an adverse employment action. These courts emphasized that there is no inherent right to rescind resignation, suggesting that employers do not commit an adverse employment action by denying such rescissions. For instance, one district court concluded that the failure to accept rescission was not an adverse employment action where the plaintiff had resigned and completed an exit interview, then quickly tried to rescind while still an employee.[18] While the court based this conclusion in part on earlier cases decided under stricter standards,[19] it also reasoned that because "employers are not usually obligated to allow their employees to rescind their resignations," and have no "duty to permit" rescission, the failure to do so is not an adverse employment action.[20]

Another district court similarly concluded that the failure to accept rescission was not an adverse employment action where the plaintiff rescinded a week after resigning in a § 1981 retaliation claim. The plaintiff made race discrimination claims for the first time in the rescission e-mail.[21] The court reasoned that the employer's "refusal to permit Plaintiff to rescind his resignation would [not] have 'dissuaded a reasonable worker from making . . . a charge of discrimination.'"[22] The court cited the absence of "a contractual or statutory duty to" accept rescission.[23] Finally, yet another district court

---

[17] *Hammonds v. Hyundai Motor Mfg. Ala.,* No. 2:10-CV-103-TFM, 2011 WL 2580168, at *5 (M.D. Ala. June 28, 2011).

[18] *Cadet v. Deutsche Bank Secs. Inc.*, No. 11 CIV. 7964 CM, 2013 WL 3090690, at *2, *13 (S.D.N.Y. June 18, 2013).

[19] *Cadet*, 2013 WL 3090690, at *13.

[20] *Id.*

[21] *Jones v. McCormick & Schmick's Seafood Rests., Inc.*, No. 1:12-CV-04503 RMB, 2014 WL 1669808, at *2, *4-5 (D.N.J. Apr. 28, 2014).

[22] *Id.* at *5.

[23] *Id.*

No. 14-31090

concluded that a failure to accept rescission was not an adverse employment action where "resignation was voluntary" and the facts were not enough to show constructive discharge.[24]

These cases suggest that failure to accept rescission has generally not amounted to an adverse employment action in retaliation cases, but they are not dispositive in the instant case for two reasons. First, *Burlington Northern* requires us to consider the context of the alleged adverse employment actions,[25] and emphasized that there are all manner of ways employers may retaliate against employees, some even unrelated to the employment.[26] Second, and relatedly, the fact that an employee has no statutory or contractual right to rescind a letter of resignation does not necessarily mean that failing to accept such a rescission is never an adverse employment action.  Most at-will employees have no right to employment in the first place, but not hiring them on the basis of their engagement in protected activities is nonetheless the ultimate adverse employment action, even under the strict, pre-*Burlington Northern* standard for what counts.[27] Just as an at-will employer does not have to hire a given employee, an employer does not have to accept a given employee's rescission. Failing to do so in either case *because* the employee has engaged in a protected activity is nonetheless an adverse employment action.

**B.**

It is in light of *Burlington Northern* that this Court considers whether

---

[24] *Hibbard v. Penn-Trafford Sch. Dist.*, No. CIV.A. 13-622, 2014 WL 640253, at *18 (W.D. Pa. Feb. 19, 2014); *see also Santandreu v. Miami Dade Cnty.*, 513 F. App'x. 902, 904, 906 (11th Cir. 2013) (holding that no adverse employment action occurred due to resignation—but not explicitly addressing fact that employee had tried to rescind resignation).

[25] *Burlington N.*, 548 U.S. at 69.

[26] *Id.* at 63-64, 67.

[27] *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995) (noting that adverse employment action cases "have focused upon ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating").

No. 14-31090

Porter experienced an adverse employment action. The district court found that because Porter had offered her resignation prior to testifying at the grievance hearing, she suffered no adverse employment action. As a general matter, it seems unlikely that a reasonable worker would tender her resignation and plan to leave while nonetheless depending on her employer to accept rescission of her resignation. The *Burlington Northern* standard, however, requires that we consider the context. In this case, circumstances suggest that a reasonable employee in Porter's shoes might have legitimately expected that her rescission of resignation would be accepted.

First, prior to her testimony, she was asked to consider rescinding her resignation by the Chairman of the Housing Authority Board, Allan Luke. Her direct supervisor, Jan Yakupzack, also asked her to consider rescission after her testimony, and spoke with her mother and pastor. While neither of these individuals had authority to make the decision itself, their requests may have contributed to a reasonable belief that Porter was at liberty to rescind, especially considered in the light most favorable to Porter.

Second, her request to stay on a month longer than her initial effective resignation date was immediately approved, plausibly creating an expectation that her resignation was still negotiable and not finalized. Porter also had Yakupzack's support, which is especially significant in light of the fact that Thibodeaux's decision not to accept Porter's rescission was the only separation decision he ever made contrary to Yakupzack's advice. Finally, Porter identified four individuals who had resigned their positions at the HTHA and then been allowed to rescind those resignations.

Overall, while a reasonable employee might not normally expect that she was entitled to rescind her resignation, in this particular context, a reasonable employee in Porter's shoes might have expected it. In light of the expectation, a fact-finder could determine that Porter would have been "well dissuad[ed]

10

No. 14-31090

from making . . . a charge of"[28] sexual harassment if she knew it would destroy the chance that her rescission would be accepted.

## IV.

The second major issue before the Court relates to the third element of retaliation claims: whether there was a causal connection between the protected activity and the adverse employment action.[29]

Under the *McDonnell Douglas* framework,

[i]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. . . . [T]he burden [then] shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation.[30]

To demonstrate pretext and avoid summary judgment, Porter must show "'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."[31]

The District Court did not reach the issue of causation since it determined that refusing to allow rescission was not an adverse employment action. The court recited the HTHA's argument that "the sole reason [her] request to rescind her resignation was not granted was . . . her repeated threats to resign," but it did not rest its decision upon the issue of causation. Having come out differently on the issue of adverse employment action, this Court must consider whether Porter has first made a prima facie showing of causation, and whether, in light of the HTHA's assertion of a legitimate reason for denying the rescission, she can demonstrate that this reason is a pretext.

---

[28] *Burlington N.*, 548 U.S. at 57.

[29] *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012).

[30] *Coleman v. Jason Pharm.*, 540 F. App'x 302, 304 (5th Cir. 2013) (unpublished) (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)).

[31] *Id.* (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

No. 14-31090

**A.**

In this Circuit, temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage.[32] "[T]he protected act and the adverse employment action [must be] 'very close' in time" to establish causation by timing alone[33]—this court has accepted a two-and-a-half-month gap as sufficiently close in one case,[34] and rejected nearly the same timeframe in another.[35] We have also accepted gaps of less than two months.[36] Given this precedent, the six-and-a-half-week timeframe between Porter's testimony and the denial of her rescission is sufficient to satisfy the prima facie case of causation.

**B.**

The HTHA challenges Porter's argument that its non-retaliatory justification for denying her rescission is mere pretext. Thibodeaux's assessment that Porter was not happy working there and often threatened to quit is the HTHA's legitimate non-retaliatory reason for the refusal to accept

---

[32] *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188, n.3 (5th Cir. 1997).

[33] *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007) (*quoting Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

[34] *Richard v. Cingular Wireless LLC*, 233 F. Appx. 334, 338 (5th Cir. 2007) (unpublished); *see Stroud v. BMC Software, Inc.*, No. 07-20779, 2008 WL 2325639, at *6 (5th Cir. June 6, 2008) (unpublished) (citing *Richard*); *see also Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "a time lapse of up to four months has been found sufficient"); *Robinson v. Our Lady of the Lake Reg'l. Med. Ctr., Inc.*, 535 F. Appx. 348, 353 (5th Cir. 2013) (unpublished) (quoting *Evans*); *cf. Barkley v. Singing River Electric Power Ass'n* 433 F. App'x 254, 260 n.10 (5th Cir. 2011) (unpublished) (noting the Supreme Court has cited cases finding three and four month gaps insufficient).

[35] *Amsel v. Tex. Water Dev. Bd.*, 464 F. Appx. 395, 401-02 (5th Cir. 2012).

[36] *Richardson v. Prairie Opportunity, Inc.*, 470 F. Appx. 282, 286-87 (5th Cir. 2012) (unpublished) (seven week gap is acceptable); *Tanner v. LSU Fireman Training Program*, 254 F.3d 1082 (5th Cir. 2001) (unpublished) (causal connection demonstrated when after protected activity, "investigation of [appellant's] personnel file began within a month, and she was fired a little over a month later"); *see also Cothran v. Potter*, 398 F. Appx. 71, 73 (5th Cir. 2010) (unpublished) (two month gap acceptable where prior adverse action took place during lapse); *Handzlik v. United States*, 93 F. Appx. 15, 19 (5th Cir. 2004) (unpublished) (noting gap of "just over two months" is similar to the timeframe held acceptable in other cases).

rescission. Yakupzack testified that Thibodeaux gave a similar explanation to the one offered in this litigation when she discussed the decision with him soon after he made it.    Both Thibodeaux and Yakupzack stated that Porter repeatedly threatened to quit, although Porter contends that she was very happy in the position. Yakupzack and the Human Relations Director testified that Porter intended to continue to look for a different job, although there is no evidence Thibodeaux, who had final authority on accepting her rescission, knew this.

Since the HTHA has produced a legitimate reason for not allowing Porter to remain on staff, the burden shifts to Porter to show that this reason is mere pretext.[37] In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court clarified that "retaliation claims must be proved according to traditional principles of but-for causation. . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."[38] This Court has consistently held that to survive summary judgment, the plaintiff must show "a conflict in substantial evidence on the question of whether the employer would not have taken the action 'but for' the protected activity."[39] The standard for summary judgment on pretext grounds remains unchanged in this Court after *Nassar*.[40]

---

[37] *Coleman v. Jason Pharmaceuticals,* 540 F. App'x 302, 304 (5th Cir. 2013) (unpublished).

[38] 133 S. Ct. 2517, 2533 (2013).

[39] *Coleman*, 540 F. App'x at 304 (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)); *see also Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012).

[40] *Valderaz v. Lubbock Cnty. Hosp. Dist.,* 611 F. App'x 816, 823 (5th Cir. 2015) (unpublished) ("To prove pretext, [plaintiff] must bring forth substantial evidence demonstrating that [defendant's] proffered reasons are a pretext for retaliation."); *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) ("[T]he plaintiff must show a conflict in substantial evidence on the question of whether the employer would not have taken the action but for the protected activity.").

No. 14-31090

## C.

Whether Porter has shown a "conflict in substantial evidence on the question of whether the employer would not have taken the action 'but for' the protected activity" is a close call.[41] While there is no dispute that Porter's work at the HTHA was excellent, as recognized by Yakupzack, Thibodeaux, and others, there is a conflict in the evidence about whether Porter was happy in her position. Porter disputes Thibodeaux's asserted assessment that she was unhappy with her work, saying instead that she was happy with her job, a claim that is corroborated by Yakupzack's testimony that Porter "enjoy[ed] working with the children." On the other hand, there is evidence from Yakupzack that Porter stated "frequently she was leaving, she was quitting," and that in deciding to rescind her resignation, she stated that "she would stay, but that she would continue to look for other employment – I mean, something to better herself or a better, you know, career." Naquanda Jefferson, the HTHA Human Resources Director, also stated that Porter discussed with her whether she should rescind her resignation "to stay a full-time employee so she would have benefits and everything until she found another job." However, it is not clear that Thibodeaux knew about any of these statements.

The record also contains substantial evidence that might lead a finder of fact to doubt Thibodeaux's credibility. Thibodeaux disavowed memory of any "sexy voice" comments, until confronted with the recording of the voicemail in which he made them. He denied authorship when confronted with an e-mail from his account attributing Porter's behavior to her menstrual cycle, questioning the email's authenticity. Finally, Chairman of the Board Allan Luke recalled that Thibodeaux earlier stated to him that he *did* remember making a "sexy voice" comment and blocking Porter from leaving a room, "to

---

[41] *Coleman*, 540 F. App'x at 304.

make a point," even though Thibodeaux later denied both allegations.

Lastly, the circumstances surrounding Thibodeaux's decision not to accept Porter's rescission provide some evidence that the legitimate reason provided is pretext. Thibodeaux's action in Porter's case was the first time he had overruled a recommendation from Yakupzack about terminating an employee. In contrast, Porter identified four employees who were allowed to rescind resignations, though Porter has not demonstrated that those four employees were similarly situated.[42] Moreover, while "temporal proximity alone is insufficient to prove but for causation" in arguing pretext, the less than seven-week space between Porter's testimony and Thibodeaux's decision is evidence suggesting pretext.[43]

Thibodeaux, who had been present at the hearing in which Porter testified against him, acted within his sole discretion to reject Porter's rescission. Porter has raised issues about his credibility, and about the truth of his assertion that she was unhappy in the position. He acted unusually, based on his prior behavior, in rejecting her letter of rescission. These circumstances create "'a conflict in substantial evidence' on the question of whether the [HTHA] would not have taken the action 'but for' [Porter's] protected activity."[44]

## V.

Because rejecting an employee's rescission of resignation can sometimes constitute an adverse employment action, and Appellant has presented a substantial conflict of evidence on the question of whether the employer would have taken the action "but for" the protected activity, we REVERSE the district court's grant of summary judgment.

[42] Two were maintenance employees; two were Housing Manager-I's.

[43] *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

[44] *Coleman*, 540 F. App'x at 304.