# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 9, 2013

No. 12-31282
Summary Calendar

Lyle W. Cayce
Clerk

SAHRAN WILSON ROBINSON,

Plaintiff - Appellant

v.

OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER, INCORPORATED,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:10-CV-584

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Sahran Robinson, who is black, reported to her employer, Our Lady of the Lake Regional Medical Center ("OLOL"), the use of a racial epithet by a co-worker. She alleged that, in response, OLOL retaliated against her by, among

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31282

other things, reducing her pay and terminating her employment. The district court granted summary judgment for OLOL. We AFFIRM.

## I. Facts and Proceedings

Robinson began working for OLOL as a "Nurse Tech II" in June 2008. Soon after, she became a "Surgical Tech" earning $20 per hour.

Robinson received her nursing degree in December 2008. She secured a temporary nursing permit pending the results of her licensing exam, and, in January 2009, joined OLOL's operating room nurse internship program. She received a corresponding pay increase to $21.88 per hour.

After joining the internship program, Robinson learned that she did not pass the exam. OLOL reclassified her as a "Surgical Tech," but continued to pay the same salary until February 2010.[1]

Supervisor Holly Leonard met with Robinson for a counseling session on September 16, 2009. Leonard explained: that Robinson was often late to work; that she did not clock in or out appropriately; that she confused patients' specimens; and that she returned to work with a cut on her hand without appropriate clearance.

Robinson proceeded to report to OLOL that she overheard a conversation between two white co-workers, one of whom was Mandy Wilson, in which Wilson referred to a black employee, Danielle Davis, as a "n***** b****."

An investigation followed. Wilson at first denied making racial, or otherwise derogatory, comments. However, she later admitted that "she probably did call [Davis] a 'b****.'" "[B]ased on her lack of honesty . . . in the beginning of the investigation," OLOL terminated Wilson in October 2009.

---

[1] Upon "review[ing] . . . staff salaries for the budgeting process" in February 2010, OLOL noticed that it was paying Robinson the rate for licensed nurses even though she had not passed the nursing exam. OLOL therefore reduced her pay on February 14, 2010.

No. 12-31282

Wilson continued to visit the OLOL campus after her termination. Following one visit, Robinson wrote to her supervisors that she was "so afraid for [her] safety [due to Wilson's appearance]," and that she was "constantly looking over [her] shoulder." In response, OLOL compliance officer Lisa Boston told Robinson that Wilson "would no longer be coming to the Surgery department and that all leaders in Surgery were aware that she should not return to the employee[-]only areas."

Robinson called Boston on March 17, 2010 to report that Wilson again was on the OLOL campus. On the same day, Boston received a phone call from Davis, who had been terminated the day before. Davis said that she "had been called and texted by a friend who works at" OLOL, and that the "friend" had told her that Wilson "was back working in the OR." Boston asked Davis who sent her the text. Davis started to respond that it was "Sa," but "then caught herself [and] asked why [Boston] wanted to know."

In a March 18, 2010 meeting, Boston asked Robinson whether she had sent text messages the day before to phone numbers purportedly belonging to Davis. Robinson replied that she did not recall Davis' number. Boston asked Robinson to produce her cell phone. Robinson responded that she was "not telling [Boston] anything." Boston "explained that [she] would have to recommend to Human Resources the termination of [Robinson's] employment because she refused to participate in the investigation." Robinson said "[f]ine" and "walked out of the room."

Melissa Guerin, a human resources employee, informed Robinson in a subsequent meeting that OLOL would not, in fact, end her employment. Instead, Guerin told Robinson that she would be given a "Decision Day" to "decide whether she would like to return to work and re-commit as a team player." Robinson "stated that she wanted to remain a part of the team."

No. 12-31282

Robinson then went "straight to [Boston's] office to discuss the investigation [into Wilson's visit to the OLOL campus] with [Boston]." Boston reported to OLOL management that Robinson acted in an "inappropriate" and "unprofessional" manner that "was not in keeping" with OLOL standards. Citing her "unprofessional behavior," OLOL terminated Robinson's employment on March 25, 2010.

Robinson filed suit against OLOL, alleging, among other things, that she was retaliated against in violation of Title VII of the Civil Rights Act of 1964. The district court granted summary judgment for OLOL, holding that Robinson did not establish a *prima facie* case of retaliation because she did not establish the requisite causal link between her report of the racial epithet and OLOL's reduction of her pay and termination of her employment. Alternatively, the district court found that Robinson did not show that OLOL's reasons for reducing her pay and terminating her employment were pretextual. Robinson appeals.

## II. Standard of Review

"We review a district court's grant of summary judgment *de novo* and apply the same standards as the district court. Summary judgment is proper if the pleadings and evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir.) (internal citations omitted), *cert. denied*, 133 S. Ct. 136 (2012).

## III. Robinson's Retaliation Claim

"A plaintiff establishes a *prima facie* case of retaliation by showing (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action." *Id.* at 657.

## A. "[Robinson] engaged in a protected activity"

The district court found that Robinson "engaged in a protected activity" when she reported Wilson's racial epithet to OLOL on September 16, 2009.  On appeal, Robinson suggests that, for the purpose of evaluating whether there was a "causal link between the protected activity and the adverse employment action," discussed below, she engaged in additional protected activities: filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2009, and reporting various grievances to OLOL on January 28, 2010.[2]  However, Robinson does not maintain, and the record does not support, that she raised these arguments in district court.  Indeed, in an exhibit attached to her complaint, under the heading "**Prima Facie Case of Discrimination**," Robinson wrote that she "engaged in protected activity under Title VII *by reporting the use of racially inappropriate comments in the work place*." (Emphasis added.)  Because "this court cannot decide disputed issues of material fact," and because Robinson did not "set forth specific facts, by affidavits or otherwise, to show there is a genuine issue for trial" as to whether she engaged in these additional protected activities, she waived these arguments on appeal. *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir. 1992).

## B. "an adverse employment action occurred"

Robinson alleged an assortment of grievances—for example, problems with "coworkers . . . attempting to retaliate against her"—that she contends qualify as adverse employment actions.  The district court found that only the reduction in Robinson's pay and the termination of her employment qualified.  On appeal, Robinson argues that the district court "erred in looking at the context of the continuing complaints . . . in a piecemeal fashion," and that, viewed in context, her various grievances amount to adverse employment actions.

---

[2] Robinson's grievances included that a friend of Wilson's was reporting her for various infractions.

No. 12-31282

"To constitute prohibited retaliation, an employment action must be 'materially adverse,' one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.' The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009) (alteration in original) (internal citation omitted) (quoting *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006)). Although "arguably adverse employment actions must be viewed in context," *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007) (per curiam), "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *White*, 548 U.S. at 68. In other words, "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Id* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Here, even viewed in context,[3] the alleged adverse employment actions do not reach the requisite level of materiality, *see Stewart*, 586 F.3d at 331, to qualify as adverse employment actions. Robinson does not identify, and we could not find, cases in which conduct similar to her alleged grievances has amounted to an adverse employment action. For example, Robinson's allegation that her "coworkers [were] attempting to retaliate against her," apparently reduces to the fact that, once she reported the racial epithet, she was subject to "stares, whispering, [and] employees not be[ing] cordial," resulting in a "hostile

---

[3] Robinson argues that the district court "individualized each [allegedly discriminatory] event." However, other than using bullet points to list Robinson's grievances, there is no indication that the district court adopted a "piecemeal" approach. Indeed, the district court primarily relied on the *White* case, referenced above, which Robinson cites for the proposition that "[c]ontext matters."

work environment." However, the complained-of conduct—for example, being reported because one of her earrings was exposed in the operating room—was not "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *see, e.g.*, *Earle v. Aramark Corp.*, 247 F. App'x 519, 524 (5th Cir. 2007) (per curiam) (observing that "disciplinary write-ups" and "micro-managing" are not "materially adverse employment actions"); *Stingley v. Den-Mar, Inc.*, 347 F. App'x 14, 19 (5th Cir. 2009) (per curiam) (observing that an unsubstantiated "belief that [a co-worker] maliciously talked about [plaintiff] and caused others to treat her less cordially" was "insufficient to raise a genuine issue of fact as to whether [plaintiff] suffered a materially adverse employment action"). Robinson also suggests that OLOL endangered her safety, and showed indifference to her concerns, by continuing to allow Wilson on campus. However, Robinson does not explain how this amounts to an adverse employment action, let alone one that is material—particularly given that Robinson never interacted with Wilson, and that OLOL warned Wilson not to enter employee-only areas of the hospital. Accordingly, because "[t]he allegedly retaliatory incidents of which [Robinson] complains are either unsupported by the record or so 'trivial' that they do not appear to be the sort of actions that would dissuade a reasonable employee from reporting discrimination," *Grice v. FMC Techs. Inc,* 216 F. App'x 401, 407 (5th Cir. 2007) (per curiam), the district court did not err in finding that only the reduction in pay and termination of employment amounted to adverse employment actions.

## C. "there was a causal link between the protected activity and the adverse employment action"

Given our discussion above, whether there is a sufficient "causal link" reduces to whether there is a close enough connection between Robinson's report

of the racial epithet ("the protected activity") and the reduction in Robinson's pay and termination of her employment ("the adverse employment action[s]").

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997). "However, we have made clear that 'the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case.'" *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 2004) (quoting *Swanson*, 110 F.3d at 1188 n.3). Indeed, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). This court has observed that "a time lapse of *up to* four months has been found sufficient to satisfy the causal connection for summary judgment purposes," *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (emphasis added) (internal quotation marks omitted), whereas a time lapse of five months does not, without additional evidence of retaliation, establish causation. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002).

Here, there is insufficient evidence of a connection between Robinson's report of the racial epithet and the reduction in her pay and termination of her employment to establish the requisite causal link. Almost five months elapsed between Robinson's September 16, 2009 report of the racial epithet and her February 14, 2010 reduction in pay. More than six months elapsed between her report of the epithet and the March 25, 2010 termination of her employment. Five and six month gaps, respectively, between a protected activity and an adverse employment action, are not "very close" for the purpose of establishing

a causal link, *see Evans*, 246 F.3d at 354; *Raggs*, 278 F.3d at 472, and Robinson did not introduce additional evidence of causation. Accordingly, she did not establish the requisite causal link.

In sum, because Robinson has not established a causal link between her report of the racial epithet and the reduction in her pay and termination of her employment, the district court correctly found that she did not allege a *prima facie* case of retaliation.

## D. The Burden-Shifting Analysis

Even assuming that Robinson established a *prima facie* case, the district court did not err in granting summary judgment.

"If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a 'legitimate, non-retaliatory reason for the adverse employment action.'" *Hernandez*, 670 F.3d at 657 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 304-05 (5th Cir. 1996)). "If the defendant presents evidence that supports that it acted properly, the fact-finder must decide whether retaliation was the but-for cause for the employer's action." *Id.* "[A] plaintiff may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" *Id.* at 660 (quoting *Long*, 88 F.3d at 308). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Long*, 88 F.3d at 308 (internal quotation marks omitted).

Here, OLOL has proffered legitimate, non-retaliatory reasons for the adverse employment actions in question, and Robinson has not shown that retaliation was the but-for cause of the actions.

First, OLOL explained that it reduced Robinson's pay because it noticed, while reviewing its budget, that her pay had not been lowered when, after not passing her licensing exam, she was reclassified as a "Surgical Tech." Robinson

argues that she never was overpaid because an OLOL email indicated that her pay "was equal to that of another surgical tech." However, as OLOL observes, the email states that Robinson was making "the same *and more* than 2 of [OLOL's] *most tenured*" surgical techs. (Emphasis added.) Further, Robinson's argument that OLOL could have discovered the pay discrepancy before February 2010 is speculative, and, given OLOL's record evidence to the contrary, does not create a genuine issue of material fact. *See, e.g., S.E.C. v. Recile*, 10 F.3d 1093, 1097 n.15 (5th Cir. 1993) (per curiam) (observing that a "bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact").

Second, OLOL explained that it terminated Robinson because, after "stat[ing] that she wanted to remain a part of the team," she acted in an "inappropriate" and "unprofessional" manner that "was not in keeping" with OLOL standards. Although Robinson argues that "the District Court erred in reviewing a transcript and not listening to the tape" of Robinson's allegedly inappropriate behavior, she does not challenge the accuracy of the transcript, only that it does not reflect the tone of her conversation with compliance officer Boston. Given the facts of this case, a dispute over the tone of this conversation does not, without more, amount to "substantial evidence" that retaliation was the "but for" cause of Robinson's termination. *See Long*, 88 F.3d at 308. Accordingly, Robinson did not introduce evidence, substantial or otherwise, to show that retaliation for reporting the racial epithet was the but-for cause of OLOL reducing her pay and terminating her employment.

In sum, even if Robinson established a *prima facia* case of retaliation, summary judgment was appropriate because OLOL proffered legitimate, non-discriminatory reasons for reducing Robinson's pay and terminating her employment, and Robinson did not show that retaliation was instead the but-for cause of these actions.

No. 12-31282

## IV. Conclusion

Accordingly, we AFFIRM the district court's grant of summary judgment.