# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2021

Lyle W. Cayce
Clerk

No. 20-50067

Brandy Newbury,

*Plaintiff—Appellant*,

*versus*

City of Windcrest, Texas,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
No. 5:18-CV-98

Before Jones, Smith, and Elrod, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Brandy Newbury worked as an officer for the Windcrest Police Department but resigned during her first, probationary year. She then sued the City of Windcrest ("the city"), bringing sex-discrimination, retaliation, and constructive-discharge claims under Title VII and Texas law, a 42 U.S.C. § 1983 claim, and a claim for intentional infliction of emotional distress. The district court granted summary judgment. We affirm.

## I.

Newbury began work for the department in March 2016. As a new

officer, she was an at-will employee—a "probationary"—during her first year.  Probationary officers work with and receive training from Field Training Officers ("FTOs") for about fourteen weeks.

During Newbury's probationary year, she encountered and occasionally worked closely with Officer Blanca Jaime, who is also female.  Jaime and Newbury did not work well together, butting heads on two occasions in April 2016.  First, they had a heated dispute about the proper use of grammar in an incident report.  During that encounter, Jaime questioned Newbury's level of education and yelled at her in front of her colleagues.  Second, Jaime and another officer filmed Newbury on their phones while confronting her about her presence in the field without her FTO.  Beyond those incidents, Newbury alleges that Jaime generally treated her rudely and dismissively, once giving her a dirty look and sometimes ignoring her or declining to shake her hand.

Newbury first raised her concerns about Jaime in April 2016 and formally alleged sexual harassment in a feedback form in July 2016.  The city took the accusation seriously, hiring a law firm to investigate.  The investigators concluded that, although Jaime had been rude to Newbury, the sex-discrimination allegations were unsubstantiated.

In January 2017, Newbury resigned.  She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") Division of the Texas Workforce Commission in March 2017 and received a right-to-sue letter that October.  Newbury sued the city, bringing several claims: sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(a), and the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.051; retaliation under Title VII and Texas Labor Code § 21.055; a violation of her right to privacy under the Fourth and Fourteenth Amendments per § 1983; and intentional infliction of emotional

No. 20-50067

distress under Texas law.

The district court granted summary judgment against all of Newbury's claims. She appeals only her Title VII and § 1983 claims.

II.

A.

Newbury contends that Jaime sexually harassed her in violation of Title VII, which forbids sexual harassment in the workplace as a form of sex discrimination. *See Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 838–39 (5th Cir. 2015) (per curiam). There are two types of sexual harassment under Title VII: *quid-pro-quo* and hostile-environment harassment. *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000). Newbury alleges only the latter.

In same-sex sexual-harassment cases, we conduct a two-step inquiry. *E.E.O.C. v. Boh Brothers Constr. Co.*, 731 F.3d 444, 453 (5th Cir. 2013) (en banc). "First, we consider whether the alleged conduct was sex discrimination and, second, we evaluate whether the conduct meets the standard for a . . . hostile-work-environment claim." *Id.*

To satisfy the first step, a plaintiff may pursue one of three evidentiary paths. *Id.* at 455. A plaintiff may show

> (1) . . . that the harasser was homosexual and motivated by sexual desire; (2) . . . that the harassment was framed "in such sex-specific and derogatory terms . . . as to make it clear that the harasser [was] motivated by general hostility to the presence" of a particular gender in the workplace; [or] (3) a plaintiff may "offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)). Additionally, a plaintiff may support a harassment claim with evi-

No. 20-50067

dence of sex-stereotyping.[1]

### B.

Newbury's claim fails at the first step because she doesn't establish that Jaime's conduct was sex discrimination. Newbury doesn't allege that Jaime's conduct was motivated by sexual desire, nor does she contend that it was otherwise sexual in nature or a display of explicit sexual animus. Instead, Newbury pursues the third evidentiary path, contending that Jaime was rude to her because she is a woman and alleging that Jaime treated women worse than men. *See id.* at 455.

Newbury's allegations are highly speculative; she presents only two pieces of evidence in support. First, she alleges that Jaime was rude to both her and another female officer. Second, she notes that a male employee told outside investigators that he believed Jaime treated men better than she treated Newbury. But that same employee also told investigators that Jaime was rude to him too. Moreover, other employees told the investigators that Jaime treats some female colleagues "cordially."

"Title VII is not a general civility code for the American workplace." *Id.* at 454. Newbury has provided evidence only that Jaime is rude to some colleagues and friendly to others. Her allegation that Jaime's rudeness was motivated by sexual animus is speculative and unsupported by the record.

Newbury contends that, under *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), her claim should survive summary judgment. Indeed, she asserts that, under *Bostock*, for a Title VII claim to succeed, a plaintiff's sex need not be the sole—or even main—reason for the action taken against him

---

[1] *Boh Brothers*, 731 F.3d at 456. *Boh Brothers* left open the possibility of other evidentiary pathways, but we have identified no others in our caselaw. *Id.* at 456–57.

or her. Newbury points out that the Court stated that "[b]ecause the plaintiff alleged that the harassment would not have taken place but for his sex—that is, the plaintiff would not have suffered similar treatment if he were female—a triable Title VII claim existed." *Id.* at 1744.

Newbury's reliance on *Bostock* is misplaced. The Court interpreted Title VII to prohibit workplace discrimination against homosexual and transgender persons. *Id.* at 1737. It reasoned that an employer's taking adverse action against employees because of their sexual orientation or transgender status was inextricably tied to sex, even if sex was not the sole motivating factor for the action. *Id.* at 1742.

Although the Court expanded the groups of individuals protected by Title VII, it in no way altered the preexisting legal standard for sexual harassment. Indeed, it reaffirmed the existing standard from *Oncale*. *See Bostock*, 140 S. Ct. at 1743–44. The Court by no means purported to shield all sexual-harassment claims from summary judgment, regardless of the evidence *vel non*. Because Newbury cannot show sex discrimination, the district court properly granted summary judgment on that claim.

### III.
### A.

Newbury contends that the district court erred in granting summary judgment on her constructive-discharge claim. Although she concedes that she resigned and wasn't fired, she asserts that she was constructively discharged.

"A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). A plaintiff alleging constructive discharge must show that his or her "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Faruki v. Parsons S.I.P., Inc.*,

123 F.3d 315, 319 (5th Cir. 1997).  To determine whether working conditions are sufficiently intolerable, we consider whether the plaintiff suffered

> "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status."

*Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (cleaned up).  Furthermore, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown*, 237 F.3d at 566.

## B.

Newbury's constructive-discharge claim falls short.  She did not receive a demotion, pay cut, or shift in her responsibilities.  Indeed, she seems to argue only the sixth potential event—that Jaime's alleged harassment was "calculated to encourage [her] resignation." *Lauderdale*, 512 F.3d at 167 (cleaned up).  Her claim fails because, as previously shown, she has not produced sufficient evidence to establish a hostile-environment claim.

Moreover, although Newbury alleges harassment, she does not specify how her alleged harassment satisfies the higher standard for constructive discharge compared to that of a hostile-environment claim. *See Brown*, 237 F.3d at 566.  Instead, she asserts that the district court erred in granting summary judgment on her constructive-discharge claim for the same reasons that it erred in granting summary judgment on sexual harassment.  In addition to a hostile-work environment, there must be aggravating factors to find

that the harassment was severe enough to be constructive discharge.[2]  The harassment that Newbury alleges—two confrontations and general unfriendliness—falls far short.  The district court properly granted summary judgment on constructive discharge.

### IV.
### A.

Newbury avers that the district court erred in granting summary judgment on her retaliation claim.  To establish a *prima facie* case of retaliation, a plaintiff must show that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007) (per curiam).  A plaintiff may use direct or circumstantial evidence. *Id.* at 556.

If the plaintiff makes a *prima facie* case, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action."  *Id.* at 557.  If the employer does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for the discriminatory or retaliatory purpose. *Id.*  The plaintiff bears a heavy burden and must "rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.*

---

[2] *See, e.g.*, *Landgraf v. USI Film Prods.*, 968 F.2d 427, 429–30 (5th Cir. 1992) (declining to find that the district court clearly erred in denying a constructive-discharge claim where the evidence showed that the plaintiff resigned for reasons other than that she was subject to "continuous and repeated inappropriate verbal comments and physical contact"), *aff'd*, 511 U.S. 244 (1994)).

### B.

Newbury's claim necessarily fails because she does not establish a *prima facie* case of retaliation. The city acknowledges that, by alleging sexual harassment in her FTO feedback form, Newbury participated in a protected activity and thereby satisfied the first element. But Newbury did not suffer an adverse employment action, so she fails to satisfy the second element.

In the Title VII-retaliation context, an employment action must be materially adverse, such that it would dissuade a reasonable employee from making a discrimination complaint. *Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017). In some cases we have held that reprimands are adverse employment actions, but in others we have determined that reprimands do not rise to that level. *Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 160 (2020).

In her brief, Newbury asserts that she was fired, alleging that her complaint against Jaime "was a factor in her termination." That characterization is inaccurate, however, because Newbury has explicitly stipulated that she resigned from the department. And, although constructive discharge qualifies as an adverse employment action, Newbury has failed to establish a *prima facie* claim of constructive discharge. *See Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439–40 (5th Cir. 2005).

Newbury also complains that her supervisor, Officer Pena, told her that filing a report against Jaime would "make things worse" for her. We need not determine whether reprimands rise to the level of adverse employment actions because Newbury's own testimony undercuts the possibility that Pena's remark was a reprimand. *See Welsh*, 941 F.3d at 824. Indeed, Newbury testified that, later in the same meeting, Pena voluntarily "retracted his former statement and [said] that none of this would be reflected on [her] evaluations." Pena told her that she "was doing a great job" and

"would be a great asset" to the police department, further assuring her that he would "evaluate [her] professionally." Per Newbury's own testimony, Pena's rapidly recanted advice to Newbury does not amount to a reprimand.

Finally, Newbury contends that her reassignment to work on the same shift as Officer Grelle is evidence of retaliation. Newbury alleges that Grelle followed her in an attempt to catch her violating department policy by holding another job.[3] Despite reporting Grelle's alleged actions to her superiors, she was later reassigned to work on the same shift as he did. Newbury contends that that shift change was retaliatory.

Newbury again fails to establish a *prima facie* claim of retaliation. It is doubtful that her shift change rose to the level of an adverse employment action.[4] But even if she could satisfy the second element, Newbury flunks the third by failing to show a causal connection between her complaint against Jaime and her placement on a shift with Grelle. Nowhere in her complaint or briefing does Newbury actually allege that her shift change was punishment for her complaint against Jaime; instead, she asserts that it was retaliation for her informal, non-protected complaint against Grelle.

Furthermore, Newbury was placed on Grelle's shift nearly six months after she lodged her complaint against Jaime. To establish causality, the protected activity and the adverse action must have "very close" temporal prox-

---

[3] Newbury does not assert that Grelle's alleged actions were sexual harassment or sex discrimination.

[4] A shift change is generally insufficient to constitute a materially adverse employment action. *See Johnson v. Halstead*, 916 F.3d 410, 420 (5th Cir. 2019). Newbury's shift change lacked the characteristics that might constitute an adverse action. For instance, she doesn't allege that she faced "significant interference with outside responsibilities or drastically and objectively less desirable hours." *Id.* In fact, Newbury moved from a night shift to a day shift, a change that is generally preferable, and Grelle was not the only other officer on her new shift.

imity, and "a five month lapse is not close enough . . . to establish the causal connection element of a prima facie case of retaliation." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020) (internal quotation marks omitted). The district court properly granted summary judgment against Newbury's retaliation claim.

## V.

In addition to sexual harassment, Newbury alleges sex discrimination. To establish a sex-discrimination claim under Title VII, a plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for the position sought; (3) she was subject to an adverse employment action; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside her class." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013). As in retaliation cases, once a plaintiff establishes a *prima facie* sex-discrimination claim, the employer must provide a nondiscriminatory reason for the adverse action. *Id.* at 364. And if the employer provides such a reason, the burden shifts back to the plaintiff to prove the reason was pretextual. *Id.* at 364–65.

Newbury's sex-discrimination claim fails for the same reason as does her retaliation claim—she did not suffer an adverse employment action. Constructive discharge is an adverse employment action, *see Harvill*, 433 F.3d at 439–40, but, as previously discussed, Newbury has failed to state a *prima facie* claim for constructive discharge, so she does not satisfy the second element.

Moreover, Newbury has not established that similarly situated men were treated differently. The record, as previously discussed, shows that Jaime was polite to some women and rude to some men in the department. Newbury, therefore, also fails on the fourth element. *See Haire*, 719 F.3d

No. 20-50067

at 363.  The district court correctly granted summary judgment on the sex-discrimination claim.

## VI.
### A.

Newbury appeals the summary judgment on her § 1983 claim, contending that the city violated her privacy by surreptitiously activating her police body camera when she was off duty and filming her inside her apartment.  A plaintiff may sue a municipality that violates her constitutional rights "under color of any statute, ordinance, regulation, custom, or usage" for money damages.  § 1983; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  To establish municipal liability, a plaintiff must show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)."  *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)).

### B.

Newbury's first barrier to establishing a § 1983 claim is her failure to raise a dispute of material fact on whether she actually suffered a constitutional violation.  She contends that her body camera was activated and recorded her at home, including during "the commission of an intimate act with her significant other."  In support of that allegation, she testified that she saw the red light on her body camera flashing.  She also asserts that other colleagues have had their cameras turn on when they did not intentionally activate them.

Newbury does not address—much less refute—the camera manufacturer's testimony that such remote recording is impossible.  The manufacturer stated that the cameras cannot be activated remotely.  It did, however,

11

offer a possible explanation for the blinking light:  When the camera is in "sleep mode," movement can change its setting to "active mode," but the device will still not record.  The manufacturer also noted that the light can blink if the power fluctuates when the camera is in its docking station.

Newbury also concedes that she has never seen recorded footage from the body camera inside her home.  Thus, it is highly speculative that she suffered any violation of her privacy.

Even if a city employee did record Newbury in her apartment, she fails to allege a policy or custom—the first element of a § 1983 claim against a municipality.  *See Pineda*, 291 F.3d at 328.  "The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policy-making authority."  *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010).  Alternatively, a plaintiff can satisfy the policy element by showing that there is a "persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy."  *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (internal quotation marks and citation omitted).

Newbury presents no evidence that the city has a policy or practice of furtively recording employees off duty, even if she was recorded remotely.  Indeed, it is undisputed that the city has a formal policy against improper recordings.  Thus, Newbury cannot raise a fact issue to survive summary judgment on her § 1983 claim.

AFFIRMED.