# United States Court of Appeals
# for the Fifth Circuit

———————

No. 24-10594

———————

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2025

Lyle W. Cayce
Clerk

Marcus Thornton,

*Plaintiff—Appellant*,

*versus*

University of Texas Southwestern Medical Center
School of Medicine,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2079

———————————————————

Before Wiener, Stewart, and Southwick, *Circuit Judges*.

Per Curiam:[*]

In this employment discrimination case, we consider the district court's judgment dismissing Plaintiff-Appellant Marcus Thornton's claims of racial discrimination and retaliation against the Defendant-Appellee University of Texas Southwestern Medical Center ("UT Southwestern")

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10594

under Title VII of the Civil Rights Act of 1964. For the following reasons, we AFFIRM.

## I.

### *A. Factual Background*

In June 2015, UT Southwestern hired Thornton, an African American, to work as a research associate.[1] For over a year, Thornton filed several complaints with the university alleging that his manager, Norma Anderson, discriminated against him on the basis of his race. Thornton alleges that Anderson's discriminatory behavior included: (1) hiding Thornton's lab coat; (2) failing to order him supplies; (3) refusing to give him work assignments; (4) drawing Thornton as a black stick-figure with the caption "Why sad? No one loves him. Y u no hpy?"; (5) making comments about how great Adolf Hitler was as a leader; and (6) defaming Thornton to his colleagues and outside vendors. Thornton reported Anderson's conduct to UT Southwestern's Director of the Center for Human Nutrition, Dr. Jay Horton. Thornton later reported Anderson's conduct to other departments and individuals at the university. Despite these complaints, Thornton alleges that UT Southwestern did not investigate his allegations of discrimination.

Thornton contends that Anderson's actions created a hostile work environment that negatively impacted his health. As a result, Thornton filed for medical leave to seek mental health treatment for anxiety and depression. UT Southwestern approved Thornton for medical leave from August 15, 2017, to October 30, 2017. In approving his request, the university informed Thornton that he was "required to present a fitness to return to work notice

---

[1] Because this appeal involves review of a motion to dismiss under Federal Rule of Civil Procedure 12(b), the facts presented herein are as alleged by Thornton. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

to be restored to employment." After his leave term expired, Thornton informed UT Southwestern that "he had not been released from his doctor to return to work, but he would return as soon as he received his medical clearance" and that he would require accommodations when he returned.

Afterwards, on November 9, 2017, Thornton was notified that Horton intended to request his termination for failing to return to work. The next day, Thornton notified Horton that he was available to return to work. Three days after that, Thornton made a formal request for accommodations, which the university swiftly denied. The next day, UT Southwestern terminated Thornton as a result of his "unavailability to work."

## B. Procedural History

Thornton filed suit against UT Southwestern alleging racial discrimination and retaliation in violation of Title VII. The university moved to dismiss Thornton's suit for failure to state a claim. The district court granted the motion and gave Thornton leave to amend his complaint. Thornton then filed an amended complaint, which the district court again dismissed without prejudice—this time due to Thornton's failure to comply with the court's rules requiring local counsel. Thornton moved to have his case reinstated. The district court granted the motion and ordered Thornton to comply with the rules.

The district court then granted UT Southwestern's motion to dismiss Thornton's amended complaint. As to Thornton's discrimination claim, the district court reasoned that his amended complaint failed to sufficiently identify similarly situated employees who were not members of his protected class and were treated more favorably than he was. As to Thornton's retaliation claim, the district court reasoned that he did not plead any facts to support his claim that his complaints against Anderson caused UT Southwestern to terminate his employment. Thus, the district court

dismissed each of Thornton's claims with prejudice and noted that Thornton had been given ample opportunitiy to "plead his best case." Thornton timely appealed.

## II.

"We review a district court's ruling on a motion to dismiss de novo, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III.

On appeal, Thornton raises two arguments. First, he argues that the district court erred by dismissing his discrimination claim on the basis that he failed to identify a similarly situated non-African American comparator. Second, he argues that the district court erred by dismissing his retaliation claim on the basis that he failed to plead facts to demonstrate that he was terminated because he engaged in a protected activity. We address each of these arguments in turn.

No. 24-10594

### *A. Discrimination*

Thornton first argues that his amended complaint plausibly pleads a claim for racial discrimination under Title VII because he alleged the existence of similarly situated non-African American employees who were treated more favorably than he was. We disagree.

"At the Rule 12(b)(6) stage, our analysis of the Title VII claim is governed by *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)—and not the evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 599 (5th Cir. 2021). Under *Swierkiewicz*, "there are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff because of her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (quotations omitted) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). But while a plaintiff need not "submit evidence to establish a prima facie case of discrimination [under *McDonnell Douglas*] at this stage, he [must] plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam). In other words, when a plaintiff's Title VII discrimination claim depends on circumstantial evidence—as Thornton's does here—we assess whether he pleaded facts

No. 24-10594

that, if proven, could satisfy *McDonnell Douglas*.[2] *See Olivarez*, 997 F.3d at 599.

At the outset of the *McDonnell Douglas* inquiry, a plaintiff must establish a *prima facie* case of discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). To do so, a plaintiff must show that he "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). In determining whether employees are similarly situated, we assess if:

> the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (citations omitted).

---

[2] "A plaintiff may use either direct or circumstantial evidence to prove a case of intentional discrimination." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983)). Direct evidence, in this context, is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption. *Id.* at 328–29. Thornton does not argue that Anderson's statements or conduct amount to direct evidence of racial discrimination. Thus, we evaluate only whether those statements and conduct amount to circumstantial evidence of racially discriminatory conduct.

No. 24-10594

Here, Thornton fails to plead facts that, if proven, could establish a *prima facie* case of discrimination. Principally, he fails to plausibly allege that he was treated less favorably than similarly situated non-African American employees.[3] *See id.* Thornton's sparse amended complaint—under a dozen pages in content—includes four relevant allegations. First, "he believed the discrimination was based on his race because his non-African American counterparts were not treated in a similar fashion." Second, he was "treated differently and less favorably by [Anderson] and [Horton] than other similarly situated employees that were not African American." Third, "[u]nder the same or similar circumstances, non-African American employees in his department have been allowed to return to work after presenting a 'fitness-to-return notice;' and were not terminated under similar circumstances." And fourth, "it was well known that both [Horton] and [Anderson] treated non-African Americans more favorably and did not terminate their employees under similar or same circumstances."

Thornton's bare allegations are insufficient. In *Olivarez*, we affirmed the district court's dismissal of a transgender plaintiff's suit because his complaint failed to "plead any facts that would permit a reasonable inference" that he was terminated "because of gender identity." 997 F.3d at 600. In evaluating that plaintiff's gender discrimination claim through the lens of *McDonnell Douglas*, we explained that "there is no allegation that any non-transgender employee with a similar job and supervisor and who engaged in the same conduct as Olivarez received more favorable treatment." *Id.* We apply the same logic here. Thornton provides no allegation of a non-African

---

[3] We assume without deciding that Thornton pleads facts that could establish the first three elements for a *prima facie* case of discrimination. *McCoy*, 492 F.3d at 556. As to the fourth, Thornton does not press that he was "replaced by someone outside his protected group," so we examine whether he plausibly pleaded that he "was treated less favorably than other similarly situated employees outside the protected group." *Id.*

No. 24-10594

American research associate who was supervised by Anderson, took medical leave, and failed to return to work with the requisite notice at the end of their leave, but was not terminated.[4] Instead, Thornton levies conclusory assertions that other employees were "similarly situated." That is not enough. At the pleading stage, we require facts—not conclusory allegations. *See Iqbal*, 556 U.S. at 678.

Because Thornton fails to allege a similarly situated non-African American comparator who was treated more favorably, he fails to plead facts plausibly alleging a *prima facie* case of discrimination.[5] *See McCoy* 492 F.3d at 556; *Chhim*, 836 F.3d at 470. Thus, the district court did not err in dismissing Thornton's claim for racial discrimination under Title VII. *Id.*

---

[4] The closest Thornton comes to providing comparator evidence is his allegation that "[u]nder the same or similar circumstances, non-African American employees in his department have been allowed to return to work after presenting a 'fitness-to-return notice.'" But this allegation does not discuss whether those employees were also research associates, supervised by Anderson, and failed to return to work after their allotted medical leave. Without more, this allegation fails to establish that Thornton was similarly situated to non-African American employees who were treated better than he was. *See McCoy*, 492 F.3d at 556; *Lee*, 574 F.3d at 260.

[5] Thornton's argument that suitable comparators—and evidence of retaliation—could be identified if the case proceeded to discovery is unavailing. As we have explained, plaintiffs "cannot simply rely on vague assertions with the unsubstantiated hope that discovery will later vindicate them." *Zinnah v. Lubbock State Supported Living Ctr.*, No. 23-10242, 2023 WL 7314350, at *2 (5th Cir. Nov. 6, 2023) (per curiam) (unpublished). And in any event, it appears that Thornton neglected to pursue discovery when he had the chance. The district court entered a scheduling order on December 12, 2022 that provided discovery deadlines, but Thornton took no steps to conduct the discovery that he now contends is necessary.

No. 24-10594

*B. Retaliation*

Thornton argues that his amended complaint plausibly pleaded a causal connection between his termination and his protected activity of filing internal complaints against Anderson. Here, too, we disagree.

To establish a *prima facie* case of retaliation, an employee must show (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action.[6] *See Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020). At the *prima facie* stage, a plaintiff can demonstrate a causal link by showing close temporal proximity between the protected activity and the adverse employment action. *See id.* at 578. He can also do so by presenting evidence to demonstrate that the adverse action was "based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

Thornton relies on the time between his protected conduct (filing internal complaints against Anderson) and his adverse employment action (termination) to show a causal link.[7] He alleges that he filed his last complaint against Anderson around June 2017 and that he was terminated on November 14, 2017. Those actions are separated by nearly half a year. We have repeatedly held that "a five-month lapse is not close enough . . . to establish the causal connection element of a prima facie case of retaliation.'" *Newbury*

---

[6] We assume, without deciding, that Thornton pleads facts that could establish the first two elements for a *prima facie* case of retaliation. *Brown*, 969 F.3d at 577.

[7] Thornton also argues that the time between his last internal complaint and his medical leave (about two months) creates an inference of causation. It does not. As discussed, the temporal nexus must be between an employee's protected activity and an adverse employment action. *Brown*, 969 F.3d at 578. Thornton's medical leave was not an adverse employment action.

9

*v. City of Windcrest*, 991 F.3d 672, 679 (5th Cir. 2021) (quoting *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 305 (5th Cir. 2020)); *see Robinson v. Our Lady of the Lake Reg'l Med. Center, Inc.*, 535 F. App'x 348, 353 (5th Cir. 2013) (unpublished). Without additional support, the roughly six months between Thornton's last internal complaint and his termination is too great a lapse in time to plead causation by temporal proximity. *See Newbury*, 991 F.3d at 679.

Thornton's only remaining causation argument also fails. He alleges that Horton had knowledge of his internal complaints when he terminated him. But alleging knowledge of protected activity is not the same as alleging that an adverse employment action was "based in part" on that knowledge. *See Medina*, 238 F.3d at 684. Thornton provides no facts from which we may infer that he was fired not because he was unavailable to work, but rather because he filed internal complaints against Anderson months before his termination.

Because Thornton fails to plead a causal link between a protected activity and an adverse employment action, he fails to plausibly allege a *prima facie* case of retaliation. *See Brown*, 969 F.3d at 577. Thus, the district court did not err in dismissing Thornton's claim for retaliation under Title VII. *Id.*

## IV.

For these reasons, we AFFIRM the district court's judgment.